Filed 5/5/26  P. v. Financial Casualty & Surety CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | D087342<br><br>(Super. Ct. Nos. CIMSB2400058, MWV22016289) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Charlie Hill, Judge.  Reversed.

Law Office of John Rorabaugh and John Mark Rorabaugh for Defendant and Appellant.

Laura Feingold, County Counsel and Daniel Pasek, Deputy County Counsel for Plaintiff and Respondent.

This is an appeal by Financial Casualty & Surety, Inc. (Financial Casualty), the surety on a bail bond, from a summary judgment on the bond.

Financial Casualty contends that the court lost jurisdiction to enforce the bond because it failed to comply with mandatory notice requirements in Penal Code section 1305.[1] We agree with that contention and reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, Financial Casualty, through its bail bond agent, Bail Hotline Bail Bonds, posted a bond in the amount of $50,000 for the release of defendant Felix Antonio Tapia Carranza from custody.

On April 18, 2023, the defendant did not appear in court. The court forfeited bail in open court. As we explain below, at that point the court should have mailed a notice of forfeiture to the bond agent and to the surety. However, it is undisputed that the court did not mail a notice of forfeiture for the April 18, 2023 forfeiture to either entity.

On April 21, 2023, the defendant appeared in court. The trial court vacated bond forfeiture and reinstated the bail bond. The court's docket and the minute order for that day's proceedings reflect the filing of a "Reassumption of Bail Bond" that same day.[2]

On October 11, 2023, the defendant again failed to appear in court. Bail was ordered forfeited. This time, the court mailed a Notice of Order Forfeiting Surety Bond to both Bail Hotline Bail Bonds and Financial Casualty.

---

[1]   All statutory references are to the Penal Code.

[2]   The record on appeal does not contain this document.

On November 6, 2024, the court entered summary judgment against Financial Casualty on the forfeited bail bond in the amount of $50,000 in principal, $435.00 in court costs, and interest.

On January 14, 2025, Financial Casualty filed a motion to set aside the summary judgment. Financial Casualty argued that the court's failure to mail a notice of forfeiture the first time the defendant failed to appear deprived the court of jurisdiction over the bond. On May 13, 2025, the court denied the motion.

Financial Casualty timely appealed.

DISCUSSION

A. *Legal Principles*

The sole question presented in this appeal is whether the court lost jurisdiction over the bond when, on April 18, 2023, it initially declared the bond forfeited, yet failed to serve a notice of forfeiture within 30 days. To answer this question, we begin by reviewing the procedures applicable to bond forfeitures.

"While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.) "[T]he 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' " (*Ibid.*) "When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (§ 1305, subd. (a).) The surety that posted the bond then has a statutory 'appearance' period in which either to produce the accused in court and have the forfeiture set aside, or to demonstrate other

3

circumstances requiring the court to vacate the forfeiture.  If the forfeiture is not set aside by the end of the appearance period, the court is required to enter summary judgment against the surety."  (*Id.* at p. 658, fn. omitted.)  "If summary judgment is not entered within the statutory 90–day period, the bond is exonerated.  (§ 1306, subd. (c).)"  (*Ibid.*)

The critical procedure at issue here is the mailing of a notice of forfeiture.  Section 1305, subdivision (b)(1), provides, "If the amount of the bond or money or property deposited exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety or the depositor of money posted instead of bail.  At the same time, the court shall mail a copy of the forfeiture notice to the bail agent whose name appears on the bond.  The clerk shall also execute a certificate of mailing of the forfeiture notice and shall place the certificate in the court's file."  Subdivision (b)(2), which applies here, provides, "If the surety is an authorized corporate surety, and if the bond plainly displays the mailing address of the corporate surety and the bail agent, then notice of the forfeiture shall be mailed to the surety at that address and to the bail agent, and mailing alone to the surety or the bail agent shall not constitute compliance with this section."  (§ 1305, subd. (b)(2).

Subdivision (b)(3) relieves the surety of all obligations under the bond if the court fails to mail that notice: "The surety or depositor shall be released of all obligations under the bond if any of the following conditions apply: [¶] (A) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture."  (§ 1305, subd. (b)(3).)

"Because the law disfavors forfeitures, sections 1305 and 1306 must be strictly construed in favor of the surety to avoid a forfeiture of the bond." (*County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10, 16.)  "The

4

standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond." (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62.) "Failure to follow the jurisdictional prescriptions in sections 1305 and 1306 renders a summary judgment on the bail bond void." (*County of Los Angeles v. Ranger Ins. Co.,* at p. 16.)

" '[T]he burden is upon the bonding company seeking to set aside the forfeiture to establish by competent evidence that its case falls within the four corners of these statutory requirements.' " (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 974; *People v. Indiana Lumbermens Mutual Ins. Co.* (2011) 194 Cal.App.4th 45, 52.)

B. *Analysis*

To meet its burden to show error, Financial Casualty presents on appeal the filed bail bond, which contains on its face the addresses of Financial Casualty, in Houston, Texas, and of Bail Hotline Bail Bonds, in Riverside, California. Financial Casualty also includes the court's docket, which documents that no notice of the April 18, 2023 forfeiture was sent either to Financial Casualty or to the bail agent. It further presents an affidavit of a deputy clerk of the San Bernardino Superior Court. The deputy confirmed that no notice of forfeiture dated April 18, 2023, had been filed, and as such none would be included in the record on appeal. The record on appeal also includes the notice of forfeiture sent to the surety and the bail agent at the addresses on the front of the bail bond on October 12, 2023.

The question before us is whether the court's failure to send notice of the April 18, 2023 forfeiture released the surety of all obligations under the bond. On its face, the answer under section 1305 would seem to be yes: the

5

bond must be exonerated and the surety released of its obligations on these facts. (See *County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488, 1493 (*County of Orange*).)

The People do not dispute that the court failed to send notice of the April 18, 2023 forfeiture to Financial Casualty as required by section 1305. But the People contend that summary judgment should nonetheless be affirmed because Financial Casualty had *actual* notice of the bond forfeiture, pointing to the Resumption of Bail Bond filed with the court.

We do not read the "actual notice" exception as broadly as the People do. A "narrow exception" to the notice requirement exists, but only in the very limited circumstance where "the clerk mailed the requisite notice to the specified parties within the 30-day jurisdictional period and it was delivered to the appropriate party within that same period through the fortuitous involvement of a third party." (*People v. American Contractors Indemnity Co.* (2001) 91 Cal.App.4th 799, 809.) That circumstance is not present here.

The prescription of section 1305 is clear: when the clerk failed to mail notice of forfeiture within 30 days of the court's forfeiture of the bond on April 18, 2023, the surety was released of its obligations under the bond. (§ 1305 subds. (a), (b)(1), (b)(3). The bond was exonerated, the court lost jurisdiction, and the summary judgment is void.

DISPOSITION

The judgment is reversed.  Financial Casualty shall recover its costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


BUCHANAN, J.


KELETY, J.

7