Filed 12/8/20

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>THE NORTH RIVER INSURANCE<br>COMPANY et al.,<br><br>    Defendants and Appellants. | F080749<br><br>(Super. Ct. No. 1489891)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. Dawna F. Reeves, Judge.

Jefferson T. Stamp for Defendants and Appellants.

Thomas E. Boze, County Counsel, and Robert J. Taro, Assistant County Counsel, for Plaintiff and Respondent.

-ooOoo-

Bad Boys Bail Bonds, acting as the agent for The North River Insurance Company (collectively, Surety) posted a $30,000 bail bond for the release of criminal defendant Gabriel Fontes Rivadeneyra from custody. When Gabriel failed to appear for a scheduled hearing, the trial court ordered bail forfeited and later entered summary judgment on the bond. In this appeal, Surety contends the trial court erred in denying its motion to vacate the void summary judgment.

Surety's claim of reversible error contains multiple steps. First, Surety makes the factual assertion that Gabriel did not appear at the hearing because his visa expired and he returned to Mexico to get it renewed, rather than staying in the United States and violating federal law. Second, under Surety's view of Penal Code section 1305, subdivision (a),[1] these facts constitute a "sufficient excuse" for Gabriel's nonappearance. Third, based on the Supreme Court's description of "the lack of a sufficient excuse for the defendant's nonappearance" as one of the two "*jurisdictional prerequisites*" that "must be met before the trial court may declare a forfeiture" of bail (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 710, italics added (*Safety National*)), Surety contends the trial court lacked the jurisdiction necessary to validly declare the bail bond forfeited. Fourth, Surety contends this lack of jurisdiction was an absence of "fundamental" jurisdiction. Fifth, the absence of fundamental jurisdiction caused the order declaring bail forfeited to be void and, thus, the later entered summary judgment also was void, not merely voidable. Sixth, because the summary judgment was void, it can be collaterally attacked at any time and this court's earlier affirmance of the summary judgment did not render it unassailable. (See *People v. The North River Insurance Company* (July 24, 2019, F075353) [nonpub. opn. affirming summary judgment].)

For purposes of this appeal, we assume without deciding that (1) Gabriel had a "sufficient excuse" for not appearing at the scheduled hearing (§ 1305, subd. (a)) and (2)

---

[1] All unlabeled references to a statutory provision are to the Penal Code.

the trial court lacked what our Supreme Court described as a "jurisdictional prerequisite" to declaring a forfeiture of bail. (*Safety National*, *supra*, 62 Cal.4th at p. 710.) We publish this opinion to set forth our interpretation of what the Supreme Court meant when it referred to the absence of a sufficient excuse as a jurisdictional prerequisite. The modifier "jurisdictional" might have referred to jurisdiction in a "fundamental" sense. (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660–663 (*American Contractors*) [two types of jurisdictional errors: (1) acts done when lacking jurisdiction in a fundamental sense and (2) acts in excess of jurisdiction when the court has fundamental jurisdiction].) Alternatively, it might have meant the missing prerequisite would cause the act of declaring a forfeiture to be "in excess of" the trial court's jurisdiction. (*Ibid*.) We adopt the latter interpretation and conclude the trial court had fundamental jurisdiction because, when it declared the forfeiture of bail, the court had subject matter jurisdiction over the bail bond and forfeiture proceeding and had personal jurisdiction over Surety. As a result, the order declaring the forfeiture of bail was, at most, an act in excess of the statutory authority conferred by section 1305, subdivision (a). Consequently, the forfeiture order was not void and the subsequently entered summary judgment was not void.

We therefore affirm the judgment.

<strong><u>FACTS AND PROCEEDINGS</u></strong>

In July 2015, Gabriel Fontes Rivadeneyra was charged with felony counts of battery inflicting serious bodily injury (§ 243, subd. (d)) and assault likely to produce great bodily injury (§ 245, subd. (a)(4)), both with enhancements (§ 12022.7, subd. (a)). At a hearing held on August 3, 2015, Gabriel waived time for the preliminary hearing and his bail was reduced to $30,000.

On August 5, 2015, Surety posted a bail bond in the amount of $30,000 for Gabriel's release. The bond stated Gabriel's first court appearance was on August 10, 2015, at 8:30 a.m. Gabriel made that appearance.

On October 20, 2015, Gabriel and his two codefendants appeared for day three of the preliminary hearing. The court set day four for October 22, 2015, and directed the defendants appear. The case was not called on that date and the next appearance date was November 5, 2015.

*Nonappearance and Forfeiture*

On November 5, 2015, Gabriel and the codefendants failed to appear for arraignment. The trial court noted Gabriel and his codefendants normally were at the court before him and were "usually waiting in the hallway when I come, and I believe that they were probably traveling from out of town." On the question of whether forfeiture was required that day, the court stated on the record: "I think I can find good cause not to forfeit the bail bond and stay the warrant, and then I can order them to be present on the next court date and then forfeit the bail if they are not here. That gives them two weeks to get here before their bail bondsman starts to make phone calls and do things to property." The court also ordered the information filed, issued a stayed bench warrant in the amount of $100,500, and continued the hearing to November 20, 2015.

On November 20, 2015, defendants again failed to appear. At the hearing, the attorneys representing Gabriel and his codefendants told the court the defendants' visas were set to expire, defendants' efforts to extend or renew the visas had failed, defendants returned to Mexico to avoid violating federal immigration law, and defendants were working with the Mexican consulate to get new visas so they could return to California and contest the criminal charges. The information provided by the attorneys is not described in detail here because we assume the information established Gabriel has a sufficient excuse for not appearing at the hearing.

4

After hearing from the attorneys, the trial court lifted the stay on the previously issued warrants and stated in open court that "each defendants' bail bond is forfeited." The clerk of the court mailed a timely notice of forfeiture of Gabriel's bail bond to Surety. In June 2016, Surety filed a motion for an extension of the appearance period pursuant to section 1305.4. The trial court granted the unopposed motion and extended Surety's deadline for returning defendants to custody to December 14, 2016.

### Motion to Vacate Forfeiture

On December 14, 2016, Surety filed a motion to vacate the forfeiture and exonerate bail. As alternatives, the motion requested the tolling of time under section 1305, subdivision (h) or the extension of time under section 1305.4. Surety argued, among other things, (1) the trial court's order extending the appearance period did not comply with section 1305.4 and (2) the district attorney's delay in deciding not to attempt to extradite Gabriel from Mexico violated due process.

In January 2017, after County's opposition and Surety's reply papers were filed, the trial court heard oral argument and took the case under submission. On February 10, 2017, the court issued its ruling from the bench. The court denied the motion to exonerate the bond, finding "it was not feasible to extradite any of the three defendants in the case." On February 27, 2017, the trial court entered summary judgment on Gabriel's bail bond. Surety filed a timely appeal.

### First Appeal

Our unpublished opinion of July 24, 2019, concluded the trial court's extension of the appearance period for 152 days and setting its expiration at December 14, 2016, was within the discretionary authority granted by section 1305.4 and, therefore, the court did not violate the statute. (*People v. The North River Insurance Company* (Jul. 24, 2019, F075353) [nonpub. opn.].) On the procedural due process claim, we applied a three-factor balancing test and concluded due process does not require prosecuting agencies to

5

notify sureties and bail agents during the appearance period of (1) the agency's determination that extradition is not feasible or (2) the agency's rationale for that determination. Based on these conclusions, we affirmed the summary judgment granted on Gabriel's bail bond. Remittitur was issued in September 2019.

### *Surety's Second Motion and Appeal*

In October 2019, Surety filed a motion to vacate the summary judgment entered on the forfeited bond, vacate the forfeiture, and exonerate the bond. Surety argued the trial court was presented with a sufficient excuse for defendants' absence on November 20, 2015, and, therefore, a jurisdictional prerequisite for forfeiture was not satisfied. Surety further argued that the lack of jurisdiction rendered the forfeiture and ensuing summary judgment void and therefore subject to collateral attack.

In January 2020, the trial court held a hearing on the motion to vacate the summary judgment. At the start of the hearing, the court stated the summary judgment had been heard and ruled on in the trial court and the appellate court and then asked Surety's counsel, "Why are we here again?" Counsel stated the issue being presented was not the same as the issue litigated in the previous motion. The court acknowledged a different argument was being made, but the broader issue of setting aside the summary judgment already had been decided. Surety's counsel then argued that when a jurisdictional issue is being raised by a party to the forfeiture, the jurisdictional issue is not cancelled by the prior ruling and res judicata would not bar the jurisdictional issue from being raised. Counsel for County argued the appellate court's unqualified affirmance in July 2019 caused the trial court to lose all jurisdiction to reopen the case.

The trial court concluded the hearing by stating: "I don't see that I have jurisdiction and for that reason I'm not going to rehear it. I believe that this Court no longer has jurisdiction over the bail issue and the summary judgment issue that I ruled on

6

previously[,] so I'm not hearing it again." The court's minute order stated Surety's motion was denied and the "Court does not have jurisdiction."

In February 2020, Surety appealed. "An order denying a motion to set aside summary judgment on a bail bond forfeiture is an appealable order." (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 554.)

## DISCUSSION

### I.      Overview of Bail Forfeiture Statutes

#### A.      *The Contract*

"While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature. [Citation.] 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' " (*American Contractors*, *supra*, 33 Cal.4th at p. 657.)

Bail bonds are regarded as contracts between the government and the surety. (*American Contractors*, *supra*, 33 Cal.4th at p. 657.) Nonetheless, the forfeiture and exoneration of bail bonds is a statutory procedure governed by the Penal Code. The statutory procedure for summary judgment was explicitly incorporated into Gabriel's bail bond, which stated: "If the forfeiture of this bond be ordered by the Court, judgment may be summarily made and entered forthwith … as provided by Sections 1305 and 1306 of the Penal Code."

#### B.      *Forfeiture of Bail*

The forfeiture of bail is addressed in section 1305, which provides in relevant part: "(a)(1) A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, *without sufficient excuse*, a defendant fails to appear for any of the following: [¶] (A) Arraignment. [¶] (B) Trial. [¶] (C) Judgment. [¶] (D) Any other occasion prior to the pronouncement of judgment if the defendant's presence in

7

court is lawfully required. [¶] (E) To surrender himself or herself in execution of the judgment after appeal." (Italics added.) Generally, "[i]f the court fails to declare a forfeiture at the time of the defendant's unexcused absence, it is without jurisdiction to do so later." (*Safety National*, *supra*, 62 Cal.4th at p. 710; *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 907 ["trial court was under a compulsion to 'thereupon' declare a forfeiture"].)

The general rule that forfeiture must be declared in open court at the time of a defendant's unexcused absence is subject to an exception. Section 1305.1 provides: "If the defendant fails to appear … upon any … occasion when his or her appearance is lawfully required, but the court has reason to believe that sufficient excuse may exist for the failure to appear, the court may continue the case for a period it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail or issuing a bench warrant. [¶] If, after the court has made the order, the defendant, without sufficient excuse, fails to appear on or before the continuance date set by the court, the bail shall be forfeited and a warrant for the defendant's arrest may be ordered issued." Here, the trial court invoked this discretionary authority when it continued the November 5, 2015 hearing to November 20, 2015, to give Gabriel and his codefendants an opportunity to appear.

Whether there is a sufficient excuse for a defendant's failure to appear "will depend upon the circumstances in the individual case." (*People v. United Bonding Ins. Co., supra,* 5 Cal.3d at p. 906.) Determining what constitutes a sufficient excuse in a particular case "rests within the sound discretion of the trial judge." (*Id*. at pp. 906–907.) "[A] defendant's failure to appear without explanation is presumptively without sufficient excuse and the burden of rebutting such presumption rests with the defendant's representatives or those who are interested in avoiding a forfeiture." (*Id*. at p. 907.)

8

Furthermore, "[a] nonappearance once excused does not constitute an excuse for subsequent nonappearances." (*Ibid.*)

## C. *Procedures After Forfeiture*

After the trial court has declared a forfeiture of bail in open court, "the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety [and bail agent]." (§ 1305, subd. (b)(1).) The surety shall be released of all obligations under the bond if the clerk fails to mail the notice of forfeiture in accordance with section 1305 within 30 days after the entry of the forfeiture. (§ 1305, subd. (b)(3).)

The bail statute provides sureties with an appearance period in which to either produce the criminal defendant in court and have the forfeiture set aside, or demonstrate other circumstances requiring the court to vacate the forfeiture. (*American Contractors*, *supra*, 33 Cal.4th at p. 657.) For a bond exceeding $400, the appearance period is 185 days (180 days, plus five days for service by mail). (§ 1305, subds. (b)(1), (c)(1); *American Contractors*, *supra*, 33 Cal.4th at p. 658.) On the surety's motion and a showing of good cause, the court may extend the appearance period for up to an additional 180 days. (§ 1305.4.) Here, Surety filed such a motion and the court extended the appearance period through December 14, 2016.

"When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound." (§ 1306, subd. (a).) "If … summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated." (§ 1306, subd. (c).) In this case, the February 2017 summary judgment was entered during the 90-day period and, thus, the timing of its entry is not in question.

When a summary judgment is "entered 'in excess of jurisdiction,' " it is voidable and should be challenged directly. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 716, fn. 7.) Voidable judgments, including summary judgments on bail bonds, "generally [are] not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier[, timely] attack.' " (*American Contractors*, *supra*, 33 Cal.4th at p. 661.) In contrast, "a collateral attack on a final judgment may be made at any time when the judgment under challenge is *void* because of an absence of 'fundamental jurisdiction.' " (*Allegheny Casualty*, *supra*, at p. 716, fn. 7.) Here, Surety cites the foregoing principle as the basis for its second challenge to the February 2017 summary judgment, arguing the second challenge is not time-barred because the judgment is void due to an absence of fundamental jurisdiction.

## II.     Fundamental Jurisdiction

Section 1305, subdivision (a) has been interpreted by our Supreme Court to contain "two *jurisdictional* prerequisites—specifically, the defendant's failure to appear at an enumerated proceeding or on another occasion as 'lawfully required,' and the lack of a sufficient excuse for the defendant's nonappearance." (*Safety National*, *supra*, 62 Cal.4th at p. 710, italics added.) Each prerequisite "must be met before the trial court may declare a forfeiture." (*Ibid*.)

### A.     *Contentions*

Surety asserts the information about Gabriel's expired visa and the difficulties in getting it renewed presented at the November 2015 hearings requires this court to find that sufficient excuse was established as a matter of law. (See § 1305, subd. (a)(1) [court shall declare bail bond forfeited "if, without sufficient excuse, a defendant fails to appear"].) Next, based on the existence of a sufficient excuse for Gabriel's nonappearance on November 20, 2015, Surety contends the trial court lacked one of the

10

"jurisdictional prerequisites" identified in *Safety National* and the absence of the prerequisite deprived the court of jurisdiction in a fundamental sense.

Surety's arguments present the legal question of how to interpret the term "jurisdictional prerequisite" used by our Supreme Court to describe the lack of a sufficient excuse for the defendant's nonappearance. (*Safety National*, *supra*, 62 Cal.4th at p. 710; cf. *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113 ["the filing of a timely notice of appeal is a *jurisdictional prerequisite*"; without it, the appellate court must dismiss the appeal], italics added.) We have located, and the parties have cited, no published decision deciding whether *Safety National* used the modifier "jurisdictional" in the term "jurisdictional prerequisite" to refer to *fundamental* jurisdiction. Accordingly, Surety's contention presents a question of first impression involving the interpretation of a California Supreme Court opinion.

As described below, we resolve this novel legal question by concluding the term "jurisdictional prerequisite" does not refer to jurisdiction in a fundamental sense. (*Safety National*, *supra*, 62 Cal.4th at p. 710.) Instead, it refers to a statutory condition, the absence of which would cause an order declaring the forfeiture of bail to be merely an act in excess of the court's jurisdiction—that is, the power or authority granted to the court by the terms of the bail bond and section 1305.

### B.     *Types of Jurisdictional Errors*

Our analysis of what our Supreme Court meant when it used the modifier "jurisdictional" to describe section 1305's prerequisites to forfeiture begins with the basic principle that "jurisdictional errors are of two types." (*American Contractors*, *supra*, 33 Cal.4th at p. 660.) " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a

11

fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.'" (*Ibid*.)

Because there are two types of jurisdictional errors, use of the phrase "lack of jurisdiction" encompasses more than the lack of jurisdiction in a fundamental sense. (*American Contractors*, *supra*, 33 Cal.4th at p. 661.) The phrase "lack of jurisdiction" also describes a situation " 'where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.'" (*American Contractors*, *supra*, 33 Cal.4th at p. 661.)

A summary of the two types of jurisdictional errors was provided in *In re Marriage of Goddard* (2004) 33 Cal.4th 49, where the Supreme Court stated: "A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*Id*. at p. 56.) Thus, fundamental jurisdiction is the power to hear and determine and it necessarily includes the power to decide a

12

question wrong as well as right. (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 501.)

C.     ***Determining the Sufficiency of an Excuse and Declaring a Forfeiture***

*American Contractors*, *supra*, 33 Cal.4th 653, demonstrates how courts analyze and decide whether an error is jurisdictional in a fundamental sense. In that case, the trial court entered a summary judgment on a forfeited bail bond on the last day of the appearance period. (*Id*. at p. 659.) The judgment was premature—that is contrary to the statute requiring summary judgment to be entered within a 90-day period *after* the appearance period has elapsed. (§ 1306, subds. (a), (c).) The issues considered in *American Contractors* were whether the premature entry rendered the judgment voidable or void and, if it was merely voidable, whether the judgment was subject to collateral attack long after it became final. (*American Contractors*, *supra*, 33 Cal.4th at p. 660.) The answer to the first issue about whether the judgment was void or voidable depended upon whether the trial court's failure to comply with section 1306's timing provision deprived the court of jurisdiction in a fundamental sense. (*American Contractors*, *supra*, 33 Cal.4th at pp. 662–663.)  To decide this issue, the court "look[ed] first to the language of the statute." (*Id*. at p. 661; *In re Marriage of Goddard*, *supra*, 33 Cal.4th at p. 54 [to determine whether the failure to comply with a statute "is jurisdictional, we begin with the language of the statute"].)

Sections 1305 and 1306 expressly provide that in certain specified circumstances, the surety is released of all obligations or the bond is exonerated. (*American Contractors*, *supra*, 33 Cal.4th at p. 661; see §§ 1305, subd. (b)(1), 1306, subd. (c).) In comparison, there is no similar statutory provision declaring the surety released or the bond exonerated by the premature entry of a summary judgment. (*American Contractors*, *supra*, 33 Cal.4th at p. 662.) Based on what sections 1305 and 1306 said and did not say, the Supreme Court concluded the failure "to follow the procedural

13

requirements to enter judgment properly did not affect the court's statutory control and jurisdiction over the bond." (*American Contractors*, *supra*, 33 Cal.4th at p. 662.) Accordingly, the court held the trial "court's failure to comply with section 1306 by prematurely entering summary judgment 'does not effect a fundamental loss of jurisdiction, i.e., "an entire absence of power to hear or determine the case, an absence of authority over the subject matter of the parties" ' " (*Ibid*.) Thus, the prematurely entered "summary judgment was voidable, not void." (*Id*. at p. 663.) To summarize, *American Contractors* provides an example of a failure to comply with a requirement of the bail forfeiture statute that did not cause a loss of fundamental jurisdiction.

In this appeal, we employ the approach used in *American Contractors* and first examine the language in sections 1305 or 1306 to see if they state the consequences of declaring a forfeiture of bail despite the existence of a sufficient excuse for the defendant's nonappearance. Neither section states the consequences of this particular failure to comply with the statutory provisions governing the forfeiture of bail. The absence of a specific statutory provision leads us to conclude that a trial court's failure to comply with section 1305 by declaring a forfeiture of bail when a sufficient excuse exists for the defendant's nonappearance does not negate the court's fundamental jurisdiction. (See *American Contractors*, *supra*, 33 Cal.4th at p. 662.) In short, when the trial court decided to declare a forfeiture, it had the authority to hear and determine the forfeiture issue and its order declaring the forfeiture was, at most, an act in excess of its statutory power. Accordingly, we interpret the term "jurisdictional prerequisites" used in *Safety National* to describe the statutory conditions set forth in section 1305, subdivision (a) to mean the criteria used to determine whether the court acted within, or in excess of, its authority or power. In other words, the modifier "jurisdictional" does not refer to jurisdiction in a fundamental sense. Accordingly, for purposes of section 1305, subdivision (a), the term "jurisdictional prerequisites" is the equivalent of the term

14

"statutory prerequisites."  (See e.g., *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413-414 [existence of a valid arbitration "agreement is a statutory prerequisite to granting the petition" to compel arbitration].)

The question of fundamental jurisdiction also can be addressed chronologically by identifying when a court obtains (1) subject matter jurisdiction and (2) personal jurisdiction.  As to personal jurisdiction over Surety, the trial court obtains that type of jurisdiction once the surety posts its bond.  (*People v. North River Ins. Co.* (2020) 48 Cal.App.5th 226, 234.)  As to subject matter jurisdiction, in *American Contractors* the Supreme Court accepted the People's observation that " 'a court has jurisdiction over a bail bond from the point it is issued until the point it is either satisfied, exonerated, or time expires to enter summary judgment after forfeiture.' "  (*American Contractors*, *supra*, 33 Cal.4th at p. 663.)  This subject matter jurisdiction arises from the terms of the bail bond contract and section 1305, which authorize the trial court to determine whether the statutory prerequisites for the forfeiture of bail exist and to declare a forfeiture of bail if those prerequisites are satisfied.  Consequently, the trial court had the fundamental jurisdiction to consider the forfeiture question and decide it, which necessarily includes the power to decide, rightly or wrongly, the question whether there was a sufficient excuse for defendant's nonappearance.  (See *REO Broadcasting Consultants v. Martin*, *supra*, 69 Cal.App.4th 489, 501.)

### D.    *Exceptional Circumstances*

Next, we consider the possibility that the February 2017 summary judgment is subject to a collateral attack despite being, at most, voidable.  Surety's opening brief does not argue exceptional circumstances precluded it from raising the existence of a sufficient excuse earlier.  Indeed, in this appeal Surety argued the trial court had enough evidence before it in November 2015 to determine a sufficient excuse existed for Gabriel's failure to appear.  That evidence was available to Surety in December 2106 when it filed a

15

timely motion to vacate the forfeiture and exonerate bail.  Consequently, we conclude Surety was not prevented from raising the existence of a sufficient excuse in a timely motion to vacate the forfeiture and no exceptional circumstances exist to render the February 2017 summary judgment subject to collateral attack.  As a result, Surety's second challenge to that judgment must fail.  (*American Contractors*, *supra*, 33 Cal.4th at pp. 663, 665 [voidable judgment was not subject to collateral attack because the surety had the means to challenge the judgment earlier].)

To summarize, (1) the trial court had fundamental jurisdiction when it declared the forfeiture, (2) the long-final summary judgment was not void, and (3) the summary judgment is not subject to collateral attack.

## DISPOSITION

The summary judgment is affirmed.  Respondent shall recover its costs on appeal.


                                                          SMITH, J.

WE CONCUR:


FRANSON, A.P.J.


SNAUFFER, J.


16